# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                            )
JASON LEOPOLD, BUZZFEED INC.,              )
                                                            )
      Plaintiffs,                                 )
                                                            )
               v.                                )     Case No. 1:19-cv-02798-RC
                                                            )
DEFENSE INTELLIGENCE AGENCY,             )
                                                            )
      Defendant.                                )
_____)

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

This matter concerns plaintiffs' blanket challenge to the exemption and associated deliberative process privilege defendant Defense Intelligence Agency ("DIA" or "defendant") has invoked to protect portions of five documents it partially withheld in response to plaintiffs' Freedom of Information Act ("FOIA") request. *See* 5 U.S.C. § 552. That request sought certain materials relating to Lt. Gen. Michael Flynn, who was Director of DIA from July 2012 until August 2014. Declaration of Robin Hill ("Hill Dec.) ¶ 6 (attached). Disclosure of the withheld information would reveal pre-decisional deliberations and communications between and among executive branch officials regarding sensitive foreign intelligence and national defense issues. The withheld information therefore falls squarely within the deliberative process privilege, and as such is shielded from disclosure by FOIA Exemption 5, 5 U.S.C. § 552(b)(5).

Defendant has released the majority of information in 340 records it located that are responsive to plaintiffs' FOIA request. To further reduce its withholdings to a maximum extent, however, it exercised its discretion and made a supplemental revised release of information previously withheld. Defendant also provided plaintiffs with draft *Vaughn* indices that

painstakingly describe all the information withheld and explain why that information is privileged.

Plaintiffs nevertheless continue to make a wholesale demand for material protected under Exemption 5. As discussed below, defendant's declarant and the attached relevant portions of the final *Vaughn* index clearly and amply describe how disclosure of this information would reveal sensitive executive branch deliberations and communications. They further explain how exposure would foreseeably chill candid and robust executive branch debate on important and delicate foreign intelligence issues. The Court should therefore grant defendant's motion for summary judgment.

## BACKGROUND

### 1.    Plaintiffs' FOIA Request

Plaintiffs submitted a FOIA request to defendant on June 6, 2019, seeking the following: (a) the last 100 emails sent and received from the inbox of Lt. Gen. Michael Flynn and Mr. Flynn's deputy, David Shedd; (b) any and all records collected and/or maintained by DIA referring to Lt. Gen. Flynn's job performance; (c) any IG complaints filed against Mr. Flynn; (d) any reports of investigations by the IG involving Mr. Flynn; (e) any and all correspondence (memos, letters, emails) between Lt. Gen. Michael Flynn and Director of National Intelligence James Clapper; (f) any and all records collected and/or maintained by DIA referring to Lt. Gen. Flynn's and David Shedd's resignation; (g) any and all reports written by Lt. Gen. Michael Flynn; (h) copies of DIA's budget; (i) any and all records referring to calling upon the DIA to reduce its budget; and (j) all records of correspondence between the DIA and the Office of Special Counsel Robert Mueller mentioning or referring to Michael Flynn. Complaint Exhibit A [ECF No. 1-1]; Hill Dec. ¶ 6. Defendant acknowledged receipt of the request on July 9, 2019. Hill Dec. ¶ 7.

### 2.    The Instant Litigation

Plaintiffs brought suit on September 18, 2019, seeking to compel defendant to produce

2

information responsive to their request.  Complaint [ECF No. 1]; Hill Dec. ¶ 8.  In January 2020, defendant engaged in conversations with plaintiffs to identify the core categories of records being requested, and to request clarifying information on the remainder.  Hill Dec. ¶ 10.  DIA identified the core categories as follows: (a) The last 100 emails sent and received from the inbox of Mr. Flynn; (b) The last 100 emails sent and received from the inbox of Mr. Shedd; (c) Any and all records collected and/or maintained by DIA referring to Lt. Gen. Flynn's job performance; (d) Any IG complaints filed against Mr. Flynn; (e) Any reports of investigations by the IG involving Mr. Flynn; (f) Any and all correspondence between Lt Gen. Flynn and DNI Clapper; (g) Any and all records collected and/or maintained by DIA referring to Lt. Gen. Flynn's resignation; (h) Any and all records collected and/or maintained by DIA referring to David Shedd's resignation; (i) Any and all reports written by Lt. Gen Flynn; (j) Copies of DIA's budget; (k) Any and all records referring/calling upon DIA to reduce its budget; and (l) All records of correspondence between DIA and the Office of Special Counsel Robert Mueller mentioning or referring to Michael Flynn.  *Id.*  With the core categories identified, DIA began searching for documents responsive to two categories and requested clarification from Plaintiffs as to others.  *Id.*

In January 2020, plaintiffs agreed to narrowing parameters in order to substantially reduce the number of responsive pages, and DIA initiated a search for records responsive to the remaining categories.  *Id.* ¶ 11.  Defendant's FOIA-Litigation (FOIA-Lit) team completed its initial data collection as to the initial two categories of plaintiffs' requests in February 2020, identifying 228 potentially responsive records.  *Id.* ¶ 12.  Due to limitations of telework associated with the COVID-19 pandemic, in response to defendant's unopposed motion, the Court stayed the existing deadlines in this matter on March 27, 2020.  *Id.* ¶¶ 13-14; *see* March 27, 2020 Minute Order.

Defendant processed the 228 documents and provided responsive, nonexempt records in

seventeen interim responses to plaintiffs on a rolling basis from January 29, 2021, through September 30, 2022. Hill Dec. ¶ 16. Defendant produced the records in part, withholding portions that it deemed exempt from release pursuant to Exemptions 1, 3, 5, and 6 of FOIA, 5 U.S.C. §§ 552(b)(1), (b)(3), (b)(5), and (b)(6), and in June 2023 provided plaintiffs with a draft *Vaughn* index for the 228 records. Hill Dec. ¶¶ 15; *see Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973).

By October 30, 2020, defendant had located, reviewed, and processed 112 documents that were potentially responsive to a third category of plaintiffs' FOIA request. Hill Dec. ¶ 14. Defendant released responsive, nonexempt records and withheld certain information pursuant to Exemptions 1, 3, 5, and 7 of FOIA, 5 U.S.C. §§ 552(b)(1), (b)(3), (b)(5), and (b)(7)(A). *Id.* Defendant produced a draft *Vaughn* index for the 112 documents to plaintiffs in December 2020. *Id.*

No responsive records were located regarding some categories of plaintiffs' FOIA request. *Id.* ¶ 16. At the conclusion of processing, the parties conferred regarding outstanding disputes in an effort to resolve the case. *Id.* ¶ 17. Defendant subsequently provided plaintiffs with a revised release of one document, *id.*, and with an updated draft *Vaughn* index of the 228 documents, further substantiating its claims under Exemptions 1, 3, 5, and 6 of FOIA. *Id.* ¶ 18.

In total, of the approximately 340 documents originally located in response to plaintiffs' FOIA request, defendant released 1 document in full, released approximately 212 documents in part, and denied approximately 119 documents in full. *Id.* 20. Defendant withheld records or portions of records under Exemptions 1, 3, 5, 6, and 7 of FOIA. *Id.* Five documents were withheld in part, exclusively under FOIA Exemption 5, with no overlap with other Exemptions. Specifically, defendant withheld exclusively under Exemption 5 portions of documents V-66, V-136, V-202, V-213, and V-214 pursuant to the deliberative process privilege. *Id.*

Plaintiffs' counsel indicated that plaintiffs intended to challenge all redactions defendant made pursuant to Exemption 5 of FOIA, except where Exemption 5 withholdings overlap with another Exemption. ECF No. 58. Plaintiffs have indicated through counsel that they do not challenge the adequacy of defendant's search or defendant's withholding of information pursuant to Exemptions 1, 3, 6, and 7.

## STANDARD OF REVIEW

Although the Freedom of Information Act "strongly favors prompt disclosure, its nine enumerated exemptions are designed to protect those 'legitimate governmental and private interests' that might be 'harmed by release of certain types of information.'" *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). "FOIA expressly recognizes that important interests are served by its exemptions, and those exemptions are as much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. ___, 139 S. Ct. 2356, 2366 (2019) (cleaned up). Defendant bears the burden of justifying its withholdings of materials responsive to plaintiffs' FOIA request, and this Court reviews defendant's response to that request de novo. *See* 5 U.S.C. § 552(a)(4)(B); *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008).

"Most FOIA cases are appropriately resolved on motions for summary judgment." *Gilliam v. U.S. Dep't of Justice*, 128 F. Supp. 3d 134, 138 (D.D.C. 2015) (citing *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011)). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The defendant in a FOIA case must show . . . that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. U.S. Dep't of Justice*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013). "Typically, the agency demonstrates

5

the applicability of a FOIA exemption by providing affidavits regarding the claimed exemptions."
*Shapiro v. U.S. Dep't of Justice*, 893 F.3d 796, 799 (D.C. Cir. 2018). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Judicial Watch v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (*per curiam*) (citations omitted).

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters [which] would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). FOIA defines "agency" as "each authority of the Government of the United States," excluding Congress, the Courts of the United States, territorial governments, and the D.C. government, 5 U.S.C. § 551(1), and including, for purposes of Exemption 5, "any executive department . . . or other establishment in the executive branch of the Government . . ., or any independent regulatory agency," *id.* § 552(f). Because the information defendant withheld from plaintiffs consists of communications and other records generated by, exchanged within, and wholly internal to DIA, or exchanged among DIA, ODNI, and other Executive Branch officials, *see* Hill Dec. ¶ 28, all of the challenged withholdings satisfy this threshold requirement.

Exemption 5 "incorporates the privileges available to Government agencies in civil litigation." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021); *Campaign Legal Ctr. v. U.S. Dep't of Justice*, 34 F.4th 14, 19 (D.C. Cir. 2022). "To carry its burden at summary judgment" in a case involving Exemption 5, defendant must demonstrate that "the materials at issue are covered by the . . . [applicable] privilege" and that "it is reasonably foreseeable that release of those materials would cause harm to an interest protected by that privilege." *Reporters Comm. for Freedom of the Press v. FBI,* 3 F.4th 350, 361 (D.C. Cir. 2021) (citing 5 U.S.C. § 552(a)(8)(A)(i)(I)). Defendant has more than met its burden here by demonstrating the applicability of privileges to the materials in question and the foreseeable harm

that would result from their disclosure.

**ARGUMENT**

**THE DEFENSE INTELLIGENCE AGENCY PROPERLY WITHHELD INFORMATION PURSUANT TO EXEMPTION 5 OF FOIA, 5 U.S.C. § 552(b)(5)**

All of the information that defendant has withheld from plaintiffs under Exemption 5 of FOIA concerns predecisional and deliberative opinions, analyses, discussions, or recommendations that are internal to DIA, or that are between or among DIA and other executive branch officials, regarding sensitive foreign intelligence matters.  The information therefore falls squarely within the deliberative process privilege.  Furthermore, defendant's line-by-line review of the records has ensured that all reasonably segregable, non-exempt portions of the information have been released.  Summary judgment in defendant's favor is therefore warranted.

**1.    Defendant Properly Withheld Predecisional, Deliberative Material Under the Deliberative Process Privilege**

Among the privileges protected by Exemption 5 is the deliberative process privilege. *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001).  The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Campaign Legal Ctr.*, 34 F.4th at 19 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).

The deliberative process privilege exists to "protect agencies from being 'forced to operate in a fishbowl' [and] is rooted in 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.'" *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 785 (quoting *EPA v. Mink*, 410 U.S. 73, 87 (1973), and *Dep't of Interior v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 8 (2001)).  The privilege "reflects the commonsense notion that agencies craft better rules

7

when their employees can spell out in writing the pitfalls as well as strengths of policy options" and the fear that agency employees "would be chilled from such rigorous deliberation if they feared it might become public." *Judicial Watch v. U.S. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017). "The privilege also avoids confusion from premature disclosure of ideas that are not—or not yet—final policy." *Id.* And it protects the integrity of the decision-making process itself by confirming that "officials should be judged by what they decided[,] not for matters they considered before making up their minds." *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (alteration in original) (citation omitted).

To come within the ambit of the deliberative process privilege, the records at issue must be both predecisional and deliberative. *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 785–786; *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 20 F.4th 49, 54 (D.C. Cir. 2021). A range of materials may qualify as predecisional and deliberative, including "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). A document is predecisional if it was "generated before the agency's final decision on the matter." *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 786; *see also Judicial Watch*, 20 F.4th at 54. A document is deliberative when it is "prepared to help the agency formulate its position," *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 786, and it "reflects the give-and-take of the consultative process," *Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.*, 514 F. Supp. 2d 36, 43 (D.D.C. 2007) (citations omitted). Courts give agencies a wide berth in determining what "constitutes … 'part of the agency give-and-take … by which the decision itself is made.' The [agency] is better situated than … [the] Court to know what confidentiality is needed" to prevent injury to agency decisionmaking. *Chem. Mfrs. Ass'n v. Consumer Prod. Safety*

8

*Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (citations omitted).

Consistent with these principles, defendant properly withheld as pre-decisional and deliberative portions of records reflecting ongoing discussions, analyses, opinions, or recommendations, between or among DIA, ODNI, intelligence community leaders, and other executive branch officials, regarding the following:

- DIA's potential future courses of action or possible approaches to certain issues or topics (Exhibit 2 Doc. Nos. V-66);

- DIA's assessments of its current status and movement towards completing a specific task (*id.* Doc. No. V-136);

- An internal opinion regarding DIA's current status with respect to a particular topic (*id.* Doc. No. V-202); and

- Deliberative internal discussions of recommendations about how to proceed with respect to a certain time-sensitive topic (V-213, V-214).

Hill Dec. ¶ 23.

All of these categories of information are pre-decisional and deliberative. *Id.* ¶ 24. They concern decisions yet to be made by DIA or other executive branch components -- whether they relate to possible future courses of action or approaches to certain topics, or to assessments of DIA's interactions with foreign partners, or analyses of critical issues. *Id.* And they contain opinions and/or recommendations, many up the chain of command, to be viewed and considered within DIA or other components of the executive branch before relevant officials make those decisions. *Id.* The release of the redacted information would result in foreseeable harm by inhibiting candid internal discussions and expressions of recommendations and judgments regarding ongoing decisions and preferred courses of action by DIA and other executive branch officials, concerning sensitive foreign intelligence and national defense issues. *Id.* The withheld

material is therefore quintessentially deliberative.

Disclosure of any such information would also severely hamper DIA's ability to engage in intelligence collection or analysis. Hill Dec. ¶ 25. Faced with the prospect that their deliberations will be exposed, DIA officials would be inhibited from rigorously engaging in the open and frank exchange of comments and opinions that occurs within DIA or between DIA and other executive branch officials when decisions with significant national security implications are being made. *Id.* Without these vital exchanges, the quality of the decision-making process within DIA and the executive branch regarding various foreign intelligence issues will be diminished. *Id.*; *see Campaign Legal Ctr.,* 34 F.4th at 28 ("Disclosing internal deliberations about controversial issues, like those at issue here, can be especially likely to endanger candid discussion within the agency."); *100Reporters v. U.S. Dep't of State*, No. 19-1753 (RDM), 602 F. Supp. 3d 41, 72 (D.D.C. 2022) ("It is entirely plausible that the knowledge or belief that internal agency deliberations regarding sensitive matters of national security and foreign policy might be disclosed (even 'years later') would chill the very discussions that the deliberative process privilege is designed to protect.").

Moreover, until the relevant officials speak to the concerned issues, no decision is final. Hill Dec. ¶ 26. Such communications, if released here, would be "generated before the adoption of an agency policy" and are not defendant's "final view on the matter." *Judicial Watch*, 20 F. 4th at 54. The disclosure of these deliberations about proposed courses of action and approaches to issues would therefore not only risk public confusion but also reveal sensitive information about the reasons behind any change between the discussions and what was finally communicated. Hill Dec. ¶ 26. In the national security arena, misperceptions are particularly damaging, as our foreign partners may misunderstand nuances of U.S. policy based on non-final deliberations that do not accurately reflect the message DIA or other executive branch officials ultimately delivered. *Id.*

10

Faced with that prospect, the same kind of harm described in the preceding paragraph would follow. *Id.*

And for all six documents subject to the deliberative process privilege, the *Vaughn* index adequately describes the "'who,' 'what,' 'where,' and 'how' of the deliberative process and the role played by the withheld material." *See* Hill Dec. Exhibit 2; *Judicial Watch*, 20 F.4th at 55; *Canning v. U.S. Dep't of State*, 346 F. Supp. 3d 1, 29 (D.D.C. 2018) (description in *Vaughn* index of "a 'draft' memorandum containing 'recommendations' for the Secretary of State regarding a conversation with a foreign head of state" was sufficient to sustain the deliberative process privilege). For these reasons, DIA properly determined that the withheld information is exempt from release under Exemption 5 pursuant to the deliberative process privilege, and that disclosure would foreseeably harm interests protected by the privilege.

**2.    Defendant Has Released All Reasonably Segregable, Non-Exempt Information**

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc.*, 566 F.2d at 260. But this provision does not require the disclosure of records in which the non-exempt information that remains, such as "isolated words or phrases," is meaningless. *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 221 (D.D.C. 2005). And a court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated . . . ." *Juarez v. U.S. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008).

In accordance with this obligation, defendant carefully reviewed and considered all of the documents withheld in their entirety and all of the withheld portions of documents relating to

plaintiffs' FOIA request, and conducted a line-by-line review of each page of every document. Hill Dec. ¶ 28. Defendant determined that the information withheld must be protected from release on the basis of FOIA Exemption 5. *Id.* All of the withheld information relates to pre-decisional deliberations within the executive branch. *Id.* Release of any of this information would chill frank discussions about sensitive foreign intelligence strategies and policy and other DIA matters, and impede the provision of critical legal advice to DIA officials. *Id.*

Moreover, on the basis of its review, defendant determined that no further meaningful segments of information can reasonably be segregated for release. *Id.* ¶ 29. Any further attempt to extract non-exempt words or phrases from the withheld portions would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words. *Id.* Defendant therefore reasonably determined that the non-exempt information could not be segregated from the exempt information in the documents or portions of documents that were withheld under Exemption 5. *See id.*; *Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 776-77 (D.C. Cir. 2002) (Combination of comprehensive *Vaughn* index describing each document withheld and the exemption claimed, and affidavits indicating that a line-by-line review had been conducted to determine segregability, were "sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why a document cannot be further segregated"); *see also Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (noting "presumption" that agencies "complied with the obligation to disclose reasonably segregable material"); *Wash. Post Co. v. Special Inspector Gen'l for Afg. Reconstruction*, No. 18-2622 (ABJ), 2021 WL 4502106, slip op. at *23 (D.D.C. 2021) ("Where an agency has conducted a line-by-line review and provided an affidavit in support, it is entitled to a presumption that it has produced the segregable portions.").

## CONCLUSION

For the foregoing reasons, the Court should grant defendant's motion for summary

judgment.

Dated: March 18, 2024                    Respectfully submitted,

                                         BRIAN M. BOYNTON
                                         Principal Deputy Assistant Attorney General

                                         ELIZABETH J. SHAPIRO
                                         Deputy Director

                                         ***/s/ Lisa A. Olson***
                                         LISA A. OLSON
                                         Senior Trial Counsel
                                         U.S. Department of Justice
                                         Civil Division
                                         Federal Programs Branch
                                         1100 L Street, N.W., Room 12200
                                         Washington, D.C. 20005
                                         Telephone: (202) 514-5633
                                         Telefacsimile: (202) 616-8470
                                         E-mail: lisa.olson@usdoj.gov
                                         *Counsel for Defendant*