UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEOPOLD et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>DEFENSE INTELLIGENCE AGENCY, )<br>)<br>Defendant. )<br>) | Civil Action No. 1:19-cv-2798 (RC) |

## DECLARATION OF ROBIN L. HILL

I, Robin L. Hill, do hereby declare the following to be true and correct:

1. I am the Deputy Division Chief of the Information Management Office Open Government Division (IMO-2) for the Defense Intelligence Agency ("DIA"). My team consists of the FOIA Integration Support Team, the FOIA Operations Response Team Washington, the FOIA Operations Response Team Madison, and the FOIA Action Support Team. I assumed this position on April 25, 2021. Prior to this position, I served as a Senior Staff Officer in the Office of Human Resources at the Defense Intelligence Agency.

2. As the Deputy Division Chief, I manage the Defense Intelligence Agency's FOIA Litigation team, and am aware of both active FOIA litigation cases and the FOIA Office's responses to FOIA requests. The FOIA Office receives, processes, and responds to requests for Defense Intelligence Agency records under the FOIA and the Privacy Act. The activities of the Defense Intelligence Agency's FOIA staff are governed by the "DOD Freedom of Information Act Program Regulation," found at 32 C.F.R. Part 286, as

supplemented by the "Defense Intelligence Agency (DIA) Freedom of Information Act" regulation, found at 32 C.F.R. Part 292.

3. The Defense Intelligence Agency is an intelligence agency and combat support agency of the United States Department of Defense, specializing in defense and military intelligence. As a component of the Department of Defense and the Intelligence Community, the Defense Intelligence Agency informs national civilian and defense policymakers about the military intentions and capabilities of foreign governments and non-state actors. It also provides intelligence assistance, integration, and coordination across uniformed military service intelligence components, which remain structurally separate from the Defense Intelligence Agency.

4. In the course of my official duties as the Deputy Division Chief of IMO-2, I became personally familiar with the FOIA request submitted by Plaintiffs to the Defense Intelligence Agency on June 6, 2019. This request is now the subject of litigation filed in the United States District Court for the District of Columbia as case number 1:19-cv-2798.

5. This declaration describes DIA's processing of Plaintiffs' FOIA request and explains the factual bases for redacting certain information under Exemption 5, 5 U.S.C. § 552(b)(5), from the responsive records DIA produced in response to Plaintiffs' FOIA requests.[1]

I. **ADMINISTRATIVE PROCESSING OF PLAINTIFF'S FOIA REQUEST**

6. By email dated June 6, 2019, Plaintiffs submitted a FOIA request to DIA for records relating to (a) The last 100 emails sent and received from the inbox of Lt. Gen. Michael

---

[1] My understanding is that Plaintiffs are not challenging the adequacy of DIA's search efforts. Accordingly, this declaration does not include a description of DIA's search for responsive records.

Flynn and Mr. Flynn's deputy, David Shedd; (b) Any and all records collected and/or maintained by DIA referring to Lt. Gen. Flynn's job performance; (c) Any IG complaints filed against Mr. Flynn; (d) any reports of investigations by the IG involving Mr. Flynn; (e) Any and all correspondence (memos, letters, emails) between Lt. Gen. Michael Flynn and Director of National Intelligence James Clapper; (f) Any and all records collected and/or maintained by DIA referring to Lt. Gen. Flynn's and David Shedd's resignation; (g) Any and all reports written by Lt. Gen. Michael Flynn; (h) Copies of DIA's budget; (i) Any and all records referring calling upon the DIA to reduce its budget; and (j) All records of correspondence between the DIA and the Office of Special Counsel Robert Mueller mentioning or referring to Michael Flynn. Michael Flynn was the Director of DIA from July 2012 until August 2014.

7. By letter dated July 9, 2019, DIA acknowledged receipt of the June 6, 2019, request and assigned it Case Control Number FOIA-0261-2019. Exhibit 1.

8. Plaintiffs filed their Complaint on September 18, 2019, alleging that DIA had failed to comply with its obligations under FOIA with respect to his request.

9. DIA filed its Answer on December 2, 2019.

10. In January 2020, DIA and Plaintiffs engaged in conversations to identify the core categories of records being requested, and to request clarifying information concerning the remainder. DIA identified the core categories as follows: (a) The last 100 emails sent and received from the inbox of Mr. Flynn; (b) The last 100 emails sent and received from the inbox of Mr. Shedd; (c) Any and all records collected and/or maintained by DIA referring to Lt. Gen. Flynn's job performance; (d) Any IG complaints filed against Mr. Flynn; (e) Any reports of investigations by the IG involving Mr. Flynn; (f) Any and all correspondence between Lt Gen.

Flynn and DNI Clapper; (g) Any and all records collected and/or maintained by DIA referring to Lt. Gen. Flynn's resignation; (h) Any and all records collected and/or maintained by DIA referring to David Shedd's resignation; (i) Any and all reports written by Lt. Gen Flynn; (j) Copies of DIA's budget; (k) Any and all records referring/calling upon DIA to reduce its budget; and (l) All records of correspondence between DIA and the Office of Special Counsel Robert Mueller mentioning or referring to Michael Flynn. With the core categories identified, DIA began searching for documents responsive to two categories and requested clarification from Plaintiffs as to others.

11. On January 14, 2020, Plaintiffs agreed to narrowing parameters in order to substantially reduce the number of responsive pages. After this agreement was reached, DIA initiated a search for records responsive to the remaining categories.

12. In February 2020, DIA's FOIA-Litigation (FOIA-Lit) team completed its initial data collection on the initial two categories of Plaintiffs' requests, wherein it identified 228 records as being potentially responsive. The FOIA-Lit team then had a physical office location move occur in early March 2020, and was just beginning to unpack and install their computer systems to resume FOIA-Lit operations when the COVID-19 pandemic began on March 17, 2020. Consistent with guidance across the federal government and Department of Defense, the FOIA-LIT team was sent home on full-time telework without access to the classified systems on which the records reside and has remained in a limited capacity since that time.

13. FOIA collection or processing cannot be done remotely by telework as the systems on which DIA records are maintained are classified systems, and all classified systems and materials must be maintained within a Secure Compartmented Information Facility (SCIF).

Under these circumstances, DIA had to defer the majority of tasks related to FOIA production, processing, and review. Due to limitations of telework due to COVID-19, DIA filed an unopposed motion to stay the existing deadlines in this matter, which the Court granted on March 27, 2020.

14. On October 30, 2020, despite the FOIA-Lit limitations specified above, DIA completed processing of a third category of Plaintiffs' FOIA request in this matter, after locating and reviewing 112 responsive documents. DIA produced nonexempt records and withheld portions that it deemed exempt pursuant to Exemptions 1, 3, 5, and 7 of FOIA, 5 U.S.C. §§ 552(b)(1), (b)(3), (b)(5), and (b)(7)(A). DIA produced a *Vaughn* index to Plaintiffs for the 112 documents on December 4, 2020.

15. By January 1, 2021, DIA began processing the 228 documents it had previously located. DIA provided nonexempt records in seventeen interim responses to Plaintiffs on a rolling basis from January 29, 2021, through September 30, 2022. DIA withheld portions that it deemed exempt from release pursuant to Exemptions 1, 3, 5, and 6 of FOIA, 5 U.S.C. §§ 552(b)(1), (b)(3), (b)(5), and (b)(6). On June 9, 2023, DIA provided Plaintiffs with a draft *Vaughn* index for the aforementioned 228 records.

16. No records were located that were responsive to certain categories of Plaintiffs' request.

17. At the conclusion of processing, the parties conferred regarding outstanding disputes in an effort to resolve the case. On November 9, 2023, DIA provided Plaintiffs with a revised release of one document, V-162.

18. On January 10, 2024, DIA provided Plaintiffs with an updated draft *Vaughn* index

for the 228 documents that substantiated Exemptions 1, 3, 5, and 6 of FOIA, 5 U.S.C. §§ 552(b)(1), (b)(3), (b)(5), and (b)(6).

19. On February 6, 2024, DIA provided Plaintiffs with a revised draft *Vaughn* index for eleven records with Exemption (b)(5) withholdings. That index has now been revised to reflect the five documents that were withheld pursuant to Exemption (b)(5) alone, with no overlap with other Exemptions. Those five documents, *i.e.*, V-66, V-136, V-202, V-213, and V-214, were withheld pursuant to the deliberative process privilege.

20. In total, of the approximately 340 documents located in response to Plaintiffs' request, DIA released approximately 1 document in full and approximately 212 documents in part, and denied approximately 119 documents in full. DIA withheld these records or portions of records under Exemptions 1, 3, 5, 6, and 7 of FOIA, 5 U.S.C. §§ 552(b)(1), (b)(3), (b)(5), (b)(6), and (b)(7).

## II. JUSTIFICATION FOR DIA'S EXEMPTION 5 WITHHOLDINGS

21. FOIA Exemption 5, 5 U.S.C. § 552(b)(5), states that an agency need not disclose "inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation within the agency" for which it foresees harm in their release. *See* 5 U.S.C. § 552(a)(8)(A)(i)(l). This exemption protects from disclosure information that is internal to the executive branch and normally privileged in the civil discovery context, including information that is protected by the deliberative process privilege. Here, the information withheld from Plaintiffs pursuant to Exemption 5 either consists or is part of predecisional and deliberative communications and other records generated by, exchanged within, and wholly internal to DIA, or exchanged between DIA and other executive agencies.

22.     The final *Vaughn* index, attached in relevant part as Exhibit 2, and incorporated herein, provides a detailed description of the information withheld and the specific justifications for DIA's withholdings.

*Deliberative Process Privilege*

23.     DIA withheld information in five documents responsive to Plaintiffs' request exclusively under FOIA Exemption 5 pursuant to the deliberative process privilege. Specifically, DIA has withheld the following information or records reflecting ongoing discussions, analyses, opinions, or recommendations, between or among DIA, ODNI, intelligence community leaders, and other executive branch officials, concerning the following:

- DIA's potential future courses of action or possible approaches to certain issues or topics (Exhibit 2 Doc. No. V-66);

- DIA's assessments of its current status and movement towards completing a specific task (*id.* Doc. No. V-136);

- An internal opinion regarding DIA's current status with respect to a particular topic (*id.* Doc. No. V-202); and

- Deliberative internal discussions of recommendations about how to proceed with respect to a certain time-sensitive topic (V-213, V-214).

24.     All of these categories of information are both pre-decisional and deliberative. They concern decisions yet to be made by DIA or other executive branch components -- whether they relate to possible future courses of action or approaches to certain topics, or to assessments of DIA's interactions with foreign partners, or analyses of critical issues. And they contain opinions and/or recommendations, many up the chain of command, to be viewed and considered

within DIA or other components of the executive branch before relevant officials make those decisions. The release of the redacted information would result in foreseeable harm by inhibiting candid internal discussions and expressions of recommendations and judgments regarding ongoing decisions and preferred courses of action by DIA and other executive branch officials, concerning sensitive foreign intelligence and national defense issues.

25. Disclosure of any such information would also severely hamper DIA's ability to engage in intelligence collection or analysis. Faced with the prospect that their deliberations will be exposed, DIA officials would be inhibited from rigorously engaging in the open and frank exchange of comments and opinions that occurs within DIA or between DIA and other executive branch officials when decisions with significant national security implications are being made. Without these vital exchanges, the quality of the decision-making process within DIA and the executive branch regarding various foreign intelligence issues will be diminished.

26. Moreover, until the relevant officials speak to the concerned issues, no decision is final. The disclosure of these deliberations about proposed courses of action and approaches to issues would therefore not only risk public confusion but also reveal sensitive information about the reasons behind any change between the discussions and what was finally communicated. In the national security arena, misperceptions are particularly damaging, as our foreign partners may misunderstand nuances of U.S. policy based on non-final deliberations that do not accurately reflect the message DIA or other executive branch officials ultimately delivered. Faced with that prospect, the same kind of harm described in the preceding paragraph would follow.

27. For these reasons, I have determined that portions of the withheld information are exempt from release under Exemption 5 pursuant to the deliberative process privilege and that

disclosure would foreseeably harm interests protected by the privilege.

*Segregability*

28. DIA carefully reviewed and considered all the documents withheld in their entirety and all the withheld portions of documents relating to Plaintiffs' FOIA request, and conducted a line-by-line review of each page of every document. DIA determined that the information withheld must be protected from release on the basis of FOIA Exemption 5. All of the withheld information is related to pre-decisional deliberations within the executive branch, communications between executive branch officials, or confidential communications concerning legal advice shared between DIA officials and their DIA legal advisors. Release of any of this information would chill frank discussions about sensitive defense and military intelligence matters DIA matters, jeopardize U.S. security, and impede the provision of critical legal advice to DIA officials.

29. On the basis of its review, DIA determined that there are no further meaningful segments of information that reasonably can be segregated for release. Any further attempt to extract non-exempt words or phrases from the withheld portions would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words. DIA therefore reasonably determined that the non-exempt information could not be segregated from the exempt information in the documents or portions of documents that were withheld under Exemption 5.

30. The statements made herein are based upon my personal knowledge, upon information made available to me in my official capacity, and upon determinations made by me in accordance therewith.

I certify under penalty of perjury that the foregoing is true and correct.

March 18, 2024

_____
Robin L. Hill
Deputy Division Chief
Open Government Division (IMO-2)
Information Management & Compliance Office
Defense Intelligence Agency