# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD, | : |
| | : |
| BUZZFEED INC., | : |
| | : |
| Plaintiffs, | :   Civil Action No.:   19-2798 (RC) |
| | : |
| v. | :   Re Document No.:   60, 62 |
| | : |
| DEFENSE INTELLIGENCE AGENCY, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

### I.  INTRODUCTION

Jason Leopold ("Leopold") and Buzzfeed Inc. ("Buzzfeed") (collectively, "Plaintiffs") filed a Freedom of Information Act ("FOIA") suit against the Defense Intelligence Agency ("DIA" or "Defendant") to force them to produce a subset of records relating to Lieutenant General Michael Flynn ("Mr. Flynn"), who was the Director of DIA from July 2012 until August 2014.  On June 6, 2019, Plaintiffs filed a FOIA request with DIA requesting the subset of records related to Michael Flynn's tenure at DIA and as a subject of Special Counsel Robert Mueller's investigation.  After DIA failed to issue a determination within FOIA's 20 business-day deadline, Plaintiffs filed suit on September 18, 2019.  DIA produced a number of documents responsive to Plaintiffs' request, and it withheld and redacted several documents pursuant to FOIA Exemptions 1, 3, 5, 6, and 7.  DIA's motion for summary judgment and Plaintiffs' cross-motion for summary judgment are ripe for review, and the issue to be resolved by the Court is

whether one of DIA's redactions should be protected by the deliberative process privilege pursuant to FOIA Exemption 5.  For the reasons stated below, the Court denies Defendant's motion for summary judgment and denies Plaintiffs' cross-motion for summary judgment.

## II.  FACTUAL BACKGROUND

In June 2019, Plaintiffs submitted a FOIA request to Defendant seeking the following records: "(a) the last 100 emails sent and received from the inbox of Lt. Gen. Michael Flynn and Mr. Flynn's deputy, David Shedd; (b) any and all records collected and/or maintained by DIA referring to Lt. Gen. Flynn's job performance; (c) any IG complaints filed against Mr. Flynn; (d) any reports of investigations by the IG involving Mr. Flynn; (e) any and all correspondence (memos, letters, emails) between Lt. Gen. Michael Flynn and Director of National Intelligence James Clapper; (f) any and all records collected and/or maintained by DIA referring to Lt. Gen. Flynn's and David Shedd's resignation; (g) any and all reports written by Lt. Gen. Michael Flynn; (h) copies of DIA's budget; (i) any and all records referring to calling upon the DIA to reduce its budget; and (j) all records of correspondence between the DIA and the Office of Special Counsel Robert Mueller mentioning or referring to Michael Flynn."  Mem. Supp. Def.'s Mot. Summ. J. ("Def.'s MSJ Mem.") at 2, ECF No. 60-1.

In September 2019, Plaintiffs brought suit against Defendant, seeking to compel the DIA to produce records that are responsive to their FOIA request.  Compl., ECF No. 1.  In January 2020, Defendant and Plaintiffs identified and discussed the core categories of records included in a portion of the requests, and they also clarified information pertaining to some of the other requests.  Def.'s MSJ Mem. at 3.  Later that month, Plaintiffs agreed to narrow the request parameters to reduce the number of responsive pages, and Defendant initiated a search for

responsive documents.[1]  *See id*.  In February 2020, Defendant's FOIA-Litigation team completed its initial data collection and identified 228 potentially responsive records.  *See id.*  The Court then stayed the action because of the limitations related to the COVID-19 pandemic, *see* Min. Order Mar. 27, 2020; and in October 2020, DIA later produced a separate 112 non-exempt records and withheld documents pursuant to FOIA Exemptions 1, 3, 5, and 7.  *See* Hill Decl. ¶ 14, ECF No. 60-2.  In January 2021, Defendant processed the initial 228 documents it previously identified and began its interim responses to Plaintiffs.  *Id*. ¶ 15.  In those responses, Defendant produced the records in part, withholding portions pursuant to FOIA Exemptions 1, 3, 5, and 6.  *Id*.  In December 2020 and June 2023, Defendant also provided Plaintiffs with a draft *Vaughn* Index for the 112 and 228 documents, respectively.  *Id*. ¶¶ 14, 15.

Defendant identified 340 documents total in response to Plaintiffs' FOIA request, and in its several responses, it withheld and redacted records pursuant to FOIA Exemptions 1, 3, 5, 6, and 7.  Def.'s MSJ Mem. at 4.  In particular, Defendant initially withheld five documents in part, "exclusively under FOIA Exemption 5, with no overlap with other Exemptions."  *Id.*  By the time Plaintiffs filed their cross-motion for summary judgment, only four documents were at issue as a result of Defendant's supplemental releases.  *See* Reply in Supp. of Def.'s Mot. for Summ. J. & Opp'n to Pls.' Cross-Mot. for Summ. J. ("Def.'s Reply") at 1, ECF No. 65.  When Defendant filed its reply in support of its motion for summary judgment and opposition to Plaintiffs' cross-motion, only two documents were at issue.  *Id*.  Finally, when Plaintiffs filed their reply in

---

[1] DIA asserts that its searches in response to Plaintiffs' requests were adequate, and it is its understanding that Plaintiffs are not challenging the adequacy of its search efforts.  Def.'s MSJ Mem. at 5.  As such, Defendant mentions in one of its declarations that it did not include a description of its search for responsive records.  Hill Decl. ¶ 5 n.1.  It is also the Court's understanding that Plaintiffs do not challenge the adequacy of DIA's search efforts.  Accordingly, the Court does not address the adequacy of DIA's search.

3

support of their cross-motion, "DIA ha[d] abandoned all but one redaction" that includes opinions and recommendations of the Director of National Intelligence regarding a trip by senior intelligence community officials to Germany.  Pls.' Reply Mem. in Supp. of Their Cross-Mot. for Summ. J. ("Pls.' Reply") at 1, ECF No. 67.

The sole issue to be resolved at summary judgment is whether the DIA met its burden in redacting a portion of two emails including the Director of National Intelligence under the deliberative process privilege and its foreseeable harm requirement, pursuant to FOIA Exemption 5.  DIA argues that the "disclosure of the withheld information would reveal pre-decisional deliberations and communications between and among executive branch officials regarding sensitive foreign intelligence and national defense issues," which it claims falls squarely within the deliberative process privilege under FOIA Exemption 5.  Def.'s MSJ Mem. at 1.  Plaintiffs explain that the deliberative process privilege does not apply because Defendant's description is "speculative" and "boilerplate."  Pls.' Reply at 1–2.

### III.  LEGAL STANDARDS

FOIA "sets forth a policy of broad disclosure of Government documents in order 'to ensure an informed citizenry, vital to the functioning of a democratic society.'"  *F.B.I. v. Abramson*, 456 U.S. 615, 621 (1982) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)).  Accordingly, FOIA "mandates release of properly requested federal agency records unless the materials fall squarely within one of nine statutory exemptions."  *Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (citing *Milner v. Dep't of Navy,* 562 U.S. 562, 565 (2011); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001)).  "Because disclosure rather than secrecy is the dominant objective of

the Act, the statutory exemptions are narrowly construed." *Elec. Priv. Info. Ctr. v. U.S. Drug Enf't Agency*, 192 F. Supp. 3d 92, 101 (D.D.C. 2016) (cleaned up).

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Def. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 97 (D.D.C. 2009). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (citing 5 U.S.C. § 552(a)(4)(B)). To satisfy its burden, the agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of the withheld document to which they apply." *Elec. Priv. Info. Ctr.*, 192 F. Supp. 3d at 103 (citing *Mead Data Central v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)). "This burden does not shift even when the requester files a cross-motion for summary judgment because the Government ultimately has the onus of proving that the documents are exempt from disclosure, while the burden upon the requester is merely to establish the absence of material factual issues before a summary disposition of the case could permissibly occur." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 99 (D.D.C. 2019). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)).

## IV.  ANALYSIS

### A.  Exemption 5

For the remaining disputed DIA redactions withheld solely pursuant to Exemption 5, the DIA includes the following description in its *Vaughn* Index: "[a]n email between ODNI and senior IC leaders regarding David Shedd's upcoming visit to Germany, and recommendations on what he should do in light of recent events, after he sets forth the specifics and purpose of the itinerary.  It includes deliberative internal discussions of recommendations concerning how to proceed with respect to a certain time-sensitive topic."  *Vaughn* Index 1, ECF. No. 60-4.  Defendant argues that "the six lines of text at issue reflect the opinions and recommendations of the Director of National Intelligence as to a trip by senior intelligence community officials to Germany, and [they] discuss the considerations underlying a time-sensitive decision to be made regarding that trip."  Def.'s Reply at 2.  Therefore, they should be withheld under the deliberative process privilege.  *Id*.  It explains that the first item withheld is a statement by the Director of National Intelligence expressing his opinion regarding a decision about the travel, the second item concerns the considerations regarding the decision, and the third item is a statement that reflects the Director of National Intelligence's opinion, including his reasoning, regarding the travel.  *Id*.  Plaintiffs argue that Defendant fails to adequately describe how the deliberative process privilege applies because it did not reveal the "topic . . . that is the subject of . . . deliberation" and the declaration uses "similarly vague language."  Pls.' Mem. Supp. Cross-Mot. Summ. J. & Opp'n Def.'s Mot. Summ. J. at 3, ECF No. 62-1.

Exemption 5 allows an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  The exemption covers documents "normally privileged in the

6

civil discovery context," *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 365 F.3d 1108, 1113 (D.C. Cir. 2004), such as materials protected by the attorney-client privilege, the attorney work-product privilege, and "what is sometimes called the 'deliberative process' privilege," *see Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

### 1. Deliberative Process Privilege

"The deliberative process privilege protects documents that reflect an agency's decision-making process." *Louise Trauma Ctr. LLC v. U.S. Dep't of Just.*, No. CV 20-3517 (RC), 2023 WL 6646335, at *3 (D.D.C. Oct. 12, 2023). "To be protected, however, the document must contain information that is both predecisional and deliberative." *Id.* "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *Id.* (quoting *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021) (citation omitted)). "More specifically, a document is considered deliberative if it 'reflects the give-and-take of the consultative process.'" *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). To withhold documents under Exemption 5 through the deliberative process privilege, an agency must also show that releasing the specific records sought "'would' chill future internal discussions." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020).

Defendant asserts that the predecisional requirement has been met because the opinions in question are concerning a decision about upcoming travel that has not been made yet. *See* Def.'s Reply at 3. For the deliberative requirement, DIA explains that the information it withheld "reflects considerations to be taken into account in making the decision," it "'help[ed] the agency [to] formulate its position,'" and it "'reflects the give-and-take of the consultative

7

process.'" *Id*. (quoting *U.S. Fish & Wildlife Serv.*, 592 U.S. at 268; *Citizens for Resp. & Ethics in Wash. v. Dep't of Homeland Sec.,* 514 F. Supp. 2d 36, 43 (D.D.C. 2007). The Court holds that the predecisional requirement was met by DIA because the deliberations included in the redacted documents occurred before DIA made its decision about the travel. The Court also finds that the deliberative requirement has been met because it is clear that the redacted information is "part of the agency give-and-take" of the decision that was ultimately made with respect to the upcoming travel. *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975). Now, the Court assesses whether DIA met the foreseeable harm requirement under the deliberative process privilege.

### 2. "Foreseeable Harm" Requirement

"Finding the deliberative process privilege applicable . . . does not end the matter" because "the government may not withhold even those privileged materials unless it also 'reasonably foresees that disclosure would harm an interest protected by' the FOIA exemption." *Reps. Comm. for Freedom of the Press v. F.B.I.*, 3 F.4th 350, 369 (D.C. Cir. 2021). To justify the withholding of documents, "[a]gencies cannot rely on "mere 'speculative or abstract fears,' or fear of embarrassment" but "must concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations." *Id*. at 369–70 (quotations omitted). Additionally, "[a] perfunctory state[ment] that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information between senior leaders within and outside of the [agency] will not suffice." *Id*. at 370 (quotations omitted). "Instead, what is needed is a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.*

DIA asserts that the disclosure of the redacted record "could impair the efficient daily working of the ODNI" and its employees "could be more circumspect in their discussions with each other" because they would be "less likely to freely discuss their ideas, strategies, and advice regarding official travel decisions." Koch Decl. ¶ 15, ECF No. 65-1.  Plaintiffs argue that "DIA's supplemental declaration is too speculative" and cite to *Reporters Committee* as it asserts that "could" is not good enough when explaining how releasing the redactions would cause foreseeable harm.  Pls.' Reply at 1–2; *see Reps. Comm.*, 3 F.4th at 369–70 ("In the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations.").  Plaintiffs argue that Defendant "has made no effort to explain how disclosing" the redacted information "would impact the deliberations of an unspecified category of intelligence communi[ty] personnel." Pls.' Reply at 2–3.  Additionally, they claim that the redaction is "simply an email in which a Senate-confirmed government official opines on whether two people should take a trip" and that "[t]he issue is so mundane that any chilled candor is remote." *Id*. at 3.

As Plaintiffs articulate, the Court finds that Defendant does not adequately demonstrate how releasing information about a possible visit to a foreign country would cause foreseeable harm to DIA.  Specifically, it has not sufficiently explained how disclosing the redacted lines from the Director of National Intelligence's email would impact the deliberations of the upcoming travel.  Here, the agency addresses the foreseeable harm requirement in its *Vaughn* Index as follows:

> Exemption (b)(5): this was used to protect inter-agency or intra-agency documents that would not be available by law to a party in litigation with the agency, specifically the deliberative process privileges.  No portions of the record withheld under this exemption

9

are reasonably segregable,[2] as they are inextricably intertwined with the properly withheld portions of the record. Disclosure of such information would reasonably cause harm to the Agency by discouraging open discussions on matters of policy between subordinates and superiors, as well as cause confusion to the public from disclosure of reasons/rationales that were not ultimately the bases for the Agency's action(s).

*Vaughn* Index 2, ECF No. 60-4. "This perfunctory parroting of the statutory language falls far short of the necessary showing." *See Cizek v. Dep't of Def.*, No. CV 23-0023 (ABJ), 2024 WL 4332111, at *7 (D.D.C. Sept. 27, 2024). DIA's justification of its redactions under the deliberative process privilege, that releasing the redacted records could disrupt the efficient daily operations of the ODNI and its employees might exercise greater caution in their discussions related to official travel decisions, *see* Koch Decl. ¶ 15, is "[an] assertion of harm [that] . . . is wholly generalized and conclusory. *Reps. Comm.*, 3 F.4th at 370. There is currently nothing in the record of this action that would support a finding that release of the lines in these emails would chill ODNI employees from being candid in their deliberations regarding travel decisions in the future. DIA has failed to adequately demonstrate how releasing the redacted information would reduce candor in deliberations between ODNI employees.

DIA bears the burden of explaining, with particularity, why disclosure would "actually impede" future deliberations. *Reps. Comm.*, 3 F.4th at 370. However, the Court finds that given the issues involved, communications between high-level officials in the intelligence community discussing an issue that could impact foreign relations with one of this country's closest allies, it

---

[2] The Court does not address segregability because it is not as issue in this action. Moreover, DIA asserts that it conducted a "line-by-line review of the records" and it "has ensured that all reasonably segregable, non-exempt portions of the information have been released." Def.'s MSJ Mem. at 7; *see also* Hill Decl. ¶ 28; Koch Decl. ¶ 16; *see generally*, Def.'s MSJ Mem. at 11–12. Also, a review of the documents themselves, make it clear that, in fact, such a line-by-line review was conducted as each line was supported by different exemptions and the content in between these targeted withholding was produced. Koch Decl. ¶ 7–19.

is hesitant to order the documents produced.  Accordingly, the Court holds that DIA has another opportunity to justify its withholding in a renewed motion for summary judgment within thirty days of this opinion and order that also includes submission of the document for *in camera* review.  *See Bloche v. Dep't of Def.*, 370 F.Supp.3d 40, 49 (D.D.C. 2019) ("Where the agencies have fallen short, the Court concludes that summary judgment in neither side's favor is appropriate at this juncture.  The Court instead orders that the agencies produce the documents at issue for *in camera* review and provide more specific justifications for the asserted claims, to which Plaintiffs will have an opportunity to respond.").  After Defendant's submission and Plaintiffs' response to DIA's submission, the Court will make its determination on whether the portions of the documents withheld solely pursuant to FOIA Exemption 5 must be produced.

## V.  CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion for summary judgment and Plaintiffs' cross-motion for summary judgment.  Within 30 days of this opinion and order, Defendant shall file a renewed motion for summary judgment justifying its withholding and submit the documents for *in camera* review.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  October 31, 2024                                                          RUDOLPH CONTRERAS

                                                                                                              United States District Judge